KINSEY and another, Appellants, vs. ARCHER and others, imp., Respondents.

*September 4 — September 29, 1891.*

*(1, 2) Sale of chattels: Evidence: Misapplication of partnership funds.*
*(3) Omission of referee to rule on evidence: Appeal.*

1. In an action for the price of grain delivered to a firm composed of two of the defendants, the question was whether their codefendants had joined in the purchase and had verbally agreed to pay for the grain. The direct testimony of the plaintiffs and of the codefendants being conflicting, and the corroborating testimony on each side being equally balanced, this court declines to disturb the finding of a referee, approved by the trial court, that the codefendants had not joined in the purchase.

2. The fact that one of the members of the firm to which the grain had been delivered applied some of the partnership funds to the payment of an individual debt for which all the other defendants were sureties, does not render the defendants for whose benefit the money was so applied liable to the plaintiffs for the price of the grain, there being nothing to show that the partnership funds so applied were impressed with any trust in plaintiffs' favor.

3. In this state the omission of a referee to rule upon objections to testimony is immaterial, so long as he takes the testimony.

APPEAL from the Circuit Court for *Clark* County.

This action was brought to recover an unpaid balance

due for forty-seven car-loads of wheat and six car-loads of oats, alleged in the complaint to have been sold and delivered by the plaintiffs to all the defendants. *Archer, Ring,* and *Youmans* answered a general denial, except as to the alleged copartnership of plaintiffs. By consent of parties, the cause was referred to be heard, tried, and determined by the referee. A trial was had, and thereafter the referee filed his findings of fact, which are to the effect that the plaintiffs sold and delivered the wheat and oats in question to the defendants Colburn and Hewett, who are indebted to the plaintiffs $4,466.50 on account thereof; but that neither of the defendants *Archer, Ring,* or *Youmans* purchased any of such grain, and neither of them is indebted to plaintiffs therefor in any sum whatever. These findings were confirmed by the court. In accordance with the conclusions of law filed by the referee, and also confirmed by the court, judgment for the plaintiffs was entered for such unpaid balance due for the grain, and for costs, against the defendants Colburn and Hewett, and against the plaintiffs and in favor of the defendants *Archer, Ring,* and *Youmans* for costs. The plaintiffs appeal from that portion of the judgment which is in favor of the defendants last above named.

For the appellants there was a brief by *R. J. MacBride,* attorney, and *D. S. Rose,* of counsel, and oral argument by *Mr. MacBride.* They contended, *inter alia,* that the reservation by the referee of objections made to the admissibility of evidence was such error as to require a reversal of the judgment. *Peck v. Yorks,* 47 Barb. 131; *Brooks v. Christopher,* 5 Duer, 216; *Clussman v. Merkel,* 3 Bosw. 402; *McKnight v. Dunlop,* 5 N. Y. 537, 545; *Sharpe v. Freeman,* 45 id. 802; *Lathrop v. Bramhall,* 64 id. 365.

For the respondents there were briefs by *James O'Neill* and *M. C. Ring,* and oral argument by *Mr. O'Neill.*

Lyon, J. I. The determination of this appeal turns chiefly upon a pure question of fact, upon which the testimony is in direct conflict. Defendant Colburn had been operating a flouring-mill at Neillsville, and was heavily indebted to plaintiffs for grain purchased of them. He was in embarrassed circumstances,— probably insolvent. All the other defendants were sureties for him for other debts which he owed. It was deemed desirable by all parties that Colburn should continue to run the mill, but plaintiffs were not willing to furnish him grain for that purpose on his individual credit. Thereupon communications were had upon the subject between all of the parties hereto, with the possible exception of the defendant *Youmans*. Very soon thereafter a copartnership was entered into by Colburn and Hewett to operate the mill, and plaintiffs were immediately notified thereof, and that Hewett (who was financially responsible) went into the firm for the purpose of giving it financial strength. Before receiving such notice plaintiffs had shipped a few car-loads of grain to Colburn. These car-loads were charged to Colburn & Hewett, and the balance of the grain in question was shipped to that firm. Pursuant to some understanding, some (perhaps most) of the orders of the firm upon the plaintiffs for grain were approved by the defendant *Archer* before the same were forwarded to plaintiffs.

The controversy relates to what took place between the parties in their communications with each other, before any of the grain in question was delivered. There is testimony on the part of the plaintiffs to the effect that all of the defendants (perhaps with the exception of *Youmans*) then and there became purchasers of the grain, and verbally agreed to pay for the same. On the other hand, there is testimony on the part of defendants *Archer*, *Ring*, and *Youmans* that they were not such purchasers, and never agreed to be responsible for the price of the grain. For

the purposes of corroboration, testimony was introduced by the respective parties of the business relations of the other defendants with Colburn, and with the Clark County Bank (with which all of them except Colburn were connected in some capacity); of the old transactions between plaintiffs and Colburn; of the reasons for requiring *Archer's* approval to orders for grain; of the disposition made of the earnings of the mill; and of various other matters not necessary to be here specified. All these matters were collateral to the main question litigated, to wit, Were the defendants *Archer, Ring,* and *Youmans* purchasers of the grain in question? This testimony is quite voluminous. No extended reference to it is required. It is sufficient to say of it that each party gave testimony of collateral facts and matters tending to corroborate his or their theory of the case, none of which were conclusive of the main contention either way, and that such corroborating testimony seems to be as strong for one side as for the other. It is difficult for us to determine which conflicting theory of the case has most collateral corroboration. Doubtless the referee and court experienced the same difficulty. So the question of the liability of *Archer, Ring,* and *Youmans* had to be determined mainly on the direct and conflicting testimony as to what verbal communications passed between them and the plaintiffs relative to the purchase of the grain. The referee found from the testimony that the last-named defendants were not such purchasers, and the court approved this finding. The testimony abundantly supports the finding, and it cannot properly be disturbed on appeal. Probably it could not have been disturbed had the finding been the other way.

II. Some exceptions to the practice before the referee on objections to testimony are urged as ground of reversal. It appears that the referee failed to rule on some of the plaintiff's objections to testimony, but received the testi-

mony. Cases in New York are cited to show that this was error. It is understood that the report of a referee in that state is treated precisely as the verdict of a jury. This may account for the rule which it is claimed prevails there. In this state the appellate court reviews the evidence taken before the referee. Hence a different rule prevails. It is quite immaterial here how the referee rules upon objections to testimony, or that he fails to rule thereon, so long as he takes the testimony. In disposing of the case, this court considers all proper testimony, and rejects that which is improper, and decides the case without reference to the rulings of the referee or court, or their omissions to rule, on objections to testimony. In this case all material testimony offered on the trial is preserved in the bill of exceptions. We find no reversible error in the proceedings before the referee.

III. It appeared on the trial that defendant Colburn applied $1,300 of money standing to the credit of Colburn & Hewett in the Clark County Bank to the payment of a debt of Colburn for which all the other defendants were sureties. It is claimed that this money should have been applied on plaintiff's demand against that firm, and that the defendants, for whose benefit it was misapplied, should be held liable therefor in this action. We find nothing in the case which supports this contention. The deposit of the money of the firm in the bank was not a trust fund, and neither of the defendants was charged with the duty of holding it for the plaintiffs.

Upon a careful examination of the record we find no valid grounds for disturbing the judgment of the circuit court.

*By the Court.*— The judgment of the circuit court is affirmed.